[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, Edward P. Trider and Betty R. Trider,[1]
husband and wife, bring this action by complaint in two counts, as revised. The first count sounds in negligence, the second count in breach of implied warranty.[2]
CT Page 3271
The factual situation regarding Count One of the Complaint follows:
The plaintiffs were each considering retiring. It would be a voluntary retirement on their part since each could continue being employed with the potential for increased retirement benefits. They decided to check out their financial status for retirement purposes. Edward Trider had contacted his employer and knew the extent of his retirement benefits. Betty Trider did not know her retirement benefits except that there was an increase based upon each year she worked.
The parties sought retirement financial planning advice from the defendant organization, specifically through contact with defendant's employee, Kathleen Hedlund. She informed the plaintiffs that a retirement plan could be prepared for them by the defendant.
Thereafter, as a part of an overall financial plan, the defendant through its employees, Kathleen Hedlund, et als, prepared and delivered to the plaintiffs the requested plan. This plan was based upon the information provided to Ms. Hedlund by the defendants. This information, inter alia, included assets of the defendants, their income and expenses, proposed retirement dates, retirement plans, etc. Further, they set out the level of income required, to support their desired life style during their retirement. Their plans were, as indicated to Ms. Hedlund, that they would want to continue a life style based upon their then annual expenses of approximately $61,000.00. That, they did not intend to build up an estate to leave to their children. Also, that Mr. Trider proposed retiring at age 62, while Mrs. Trider wanted the plan to address her retirement income at age 55, and also age 60.
Ms. Hedlund also required from the plaintiffs information as to the retirement plan benefits each of the defendants would be entitled to upon retirement. Mr. Trider had this information from prior contact with his employers. Mrs. Trider did not have her retirement benefits information. However, Ms. Hedlund assured the defendants she would obtain that information from Mrs. Trider's pension or retirement benefits personnel.
Ms. Hedlund admits she did not obtain this information from the pension personnel, but rather developed this information herself. In these calculations she erroneously applied a larger CT Page 3272 multiplier than the pension plan called for, based upon Mrs. Trider's number of years of employment. This resulted in an incorrect benefit payment receivable by Mrs. Trider in an annual sum of approximately $23,000.00 if Mrs. Trider was to receive survivorship benefits and approximately $28,000.00 without survivorship benefits to Mr. Trider. The correct benefit sum of approximately $20,000.00 was the benefit due Mrs. Trider. These sums were based upon Mrs. Trider's retirement at age 55. This is the age at which she subsequently determined to retire.
Further, the plaintiffs informed Ms. Hedlund not to include in her calculations subsequent increases in Mrs. Trider's retirement resulting from cost of living adjustments which she would be entitled.
Ms. Hedlund together with other staff members of the defendant, American Express, about the middle of November, 1993 produced the plan requested by the plaintiffs. Mr. Trider subsequently retired in mid 1994. This was somewhat later than the January 1994 date he indicated to Ms. Hedlund he proposed retiring at.
During the latter part of 1994, Mrs. Trider discovered an error in the defendants' plan which would reduce her retirement income from the $23,000.00 set out in the defendants' plan to $20,000.00, at age 55. None the less she elected to retire the following June 1995 with full knowledge of the reduced retirement benefits she would receive, from that set out in the plan.
The principle concern of the plaintiffs regarding their retirement date as related to Ms. Hedlund by the plaintiffs, was that they have an adequate income stream during their retirements so that their life style would remain the same as prior to retirement. They set this income figure at approximately $61,000.00 annually basing it upon existing annual expenditures, together with anticipated changes in their asset portfolio, particularly sales of real estate.
The result of the miscalculation by Ms. Hedlund of the retirement benefits to be received by Mrs. Trider inflated the total annual income the Triders would receive upon the retirement of Mrs. Trider at age 55. None the less, Mrs. Trider with full knowledge of the actual, reduced income she would receive elected to take retirement at age 55. CT Page 3273
Insofar as the Triders' objective upon retirement was to maintain the same living standard necessitating an annual income of $61,000.00, the plan error (amounting to $3,000.00 or $7,000.00, depending upon Mrs. Trider's election of survivor benefits or not) as to Mrs. Trider's retirement benefits had no adverse effect on that objective since their total income stream was substantially above that sum.
The court finds that the error committed by Ms. Hedlund was clerical in that she applied an incorrect multiplier in arriving at the annual benefits due to Mrs. Trider. Or, alternatively, a mistake in judgment in relying upon her own calculations rather than obtaining the benefits due to Mrs. Trider from the retirement board personnel whose duty was to make this determination.
In either case, the issue raised is, did this error adversely affect the plaintiffs' retirement plans?
Mrs. Trider knew the full extent of this error on her retirement benefits before she made the decision to retire. There was no showing that the plaintiffs' retirement plans as given to Ms. Hedlund were affected in any way because of Ms. Hedlund's error.
Mr. Trider contends that his retirement prior to his discovery of Ms. Hedlund's error adversely affected him in that he could have elected to continue in his employment. However, neither plaintiff contends that the reduction in projected income did, in fact, adversely affect the standard of living they anticipated for their retirement which was based upon annual expenditures of $61,000.00. They do, however, point out that one of the reasons they had for having the defendants set out a retirement plan for them was due to their worry that there might not be a sufficient financial "cushion" to absorb variations in their retirement income.
The financial adverse impact on their overall gross income because of the defendants error was minimal. In point of fact, the parties' own determination, as reported to Ms. Hedlund, regarding the value of various real estate properties they proposed to sell upon retirement and which were involved in her plan calculations, had a considerably greater negative impact on their assets valuation than did the defendants' error. CT Page 3274
Nonetheless, the defendants' error did have a negative impact on the plaintiffs in that psychologically their worry of a sufficient financial retirement cushion was thrown in doubt. There was uncertainty as to the accuracy of the complete plan; the judgments made as to what the future income calculations amounted to.
However, the error by the defendants in estimating retirement benefits available to Mrs. Trider were not alone in having an adverse impact upon the financial plan prepared by the defendants. Information submitted by the plaintiffs regarding values of various real estate assets were substantially overvalued with a significant adverse effect on the plan's estimate of the plaintiffs' total financial worth.
Inspite of both — the defendants' error as to Mrs. Trider's retirement pension income and the Triders' overvaluation of their real assets, the Triders' primary concern and objective was to have an income stream of approximately $61,000.00 to maintain their existing life style, together with a sufficient financial "cushion" from both, the potential income and/or assets to continue supporting that life style. This objective was met by the plan developed by the defendants.
The plaintiffs were aware that the plan met these goals and impliedly accepted the plan when Mrs. Trider elected to retire at age 55 years.
Mr. Trider's argument that had he known of the reduced pension Mrs. Trider would be receiving at the time he determined he would retire he could have continued at his employment for a further period of time. However, this contention of Mr. Trider's does not address the need for the plaintiffs to have this additional income to reach their retirement goal of having sufficient funds during their retirement to provide a life style they were accustomed to. Further, at the time of the plaintiffs' discussions with Ms. Hedlund, Mr. Trider had investigated and knew his retirement benefits, and although they had no accurate information as to Mrs. Trider's retirement benefits, he, Mr. Trider, indicated that he had the expectation of retiring at about age 62. Further, when the plaintiffs had the actual retirement benefits figures Mrs. Trider was to receive she determined to retire at the earlier 55 year age rather than the age of 60 years that she indicated to Ms. Hedlund was an option she was considering. CT Page 3275
Thus, taking into consideration all the evidence admitted at the trial, apply the applicable law, and evaluating the parties' arguments and briefs, the court orders that:
Judgment is to enter for the defendants on the Complaint as against both plaintiffs, together with applicable costs.
JULIUS J. KREMSKI JUDGE TRIAL REFEREE